Argued and submitted November 2, 1994, decision of the Court of Appeals reversed and case remanded to the Court of Appeals for further proceedings February 9, 1995

PACIFIC NORTHWEST BELL
TELEPHONE COMPANY,
dba U S West Communications, Inc.,
*Respondent on Review,*

*v.*

Ron EACHUS,
Nancy Ryles, and Myron B. Katz,
*Respondents on Review,*

*and*

CITIZENS' UTILITY BOARD,
*Petitioner on Review.*

UTILITY REFORM PROJECT,
*Respondent,*

*v.*

OREGON PUBLIC UTILITY COMMISSION,
*Defendant.*

PACIFIC NORTHWEST
BELL TELEPHONE COMPANY,
dba U S West Communications, Inc.,
*Respondent,*

*v.*

Ron EACHUS,
Nancy Ryles, and Myron B. Katz,
*Defendant,*

CITIZENS' UTILITY BOARD,
*Intervenor.*

UTILITY REFORM PROJECT,
*Petitioner on Review,*

*v.*

OREGON PUBLIC UTILITY COMMISSION,
*Respondent on Review.*

(CC 9001-00435, 9002-01260;
CA A69043; SC S41285, S41319)

888 P2d 562

558

J. Rion Bourgeois, Portland, argued the cause and filed the petition for petitioner Citizens' Utility Board.

Linda K. Williams and Daniel W. Meek, Portland, argued the cause and filed the petition for petitioner Utility Reform Project.

Keith Kutler, Assistant Attorney General, Salem, argued the cause and filed the response and brief for respondent Oregon Public Utility Commission.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, and Graber, Justices.

GILLETTE, J.

## GILLETTE, J.

This is a case involving the question of where jurisdiction lies to hear a challenge to a Public Utility Commission (PUC) rate decision. Under the customary form of PUC proceeding, a complaint is filed with (or by) the PUC, and at least one party is designated as a "defendant," ORS 756.500(1).[1] However, the present PUC proceeding was brought without a formal "complaint," but instead on the PUC's "own motion." ORS 756.515.[2] In a proceeding without a "complaint," the statutes are silent as to whether the regulated party is to be considered a "defendant." The importance of the "defendant" categorization is made clear in yet another statute. Under ORS 756.580(2),[3] a challenge to a

---

[1] ORS 756.500(1) provides:

"Any person may file a complaint before the commission, or the commission may, on the commission's own initiative, file such complaint. The complaint shall be against any person whose business or activities are regulated by some one or more of the statutes, jurisdiction for the enforcement or regulation of which is conferred upon the commission. *The person filing the complaint shall be known as the complainant and the person against whom the complaint is filed shall be known as the defendant.*" (Emphasis added.)

[2] ORS 756.515 provides in part:

"(1) Whenever the commission believes that any rate may be unreasonable or unjustly discriminatory, or that any service is unsafe or inadequate, or is not afforded, or that an investigation of any matter relating to any * * * telecommunications utility * * * or other person should be made, or relating to any person to determine if such person is subject to the commission's regulatory jurisdiction, the commission may on motion summarily investigate any such matter, with or without notice.

"(2) If after making such investigation the commission is satisfied that sufficient grounds exist to warrant a hearing being ordered upon any such matter, the commission shall furnish any * * * telecommunications utility * * * or other person interested a statement notifying it of the matters under investigation, which statement shall be accompanied by a notice fixing the time and place for hearing upon such matters in the manner provided in ORS 756.512 for notice of complaint.

"(3) Thereafter proceedings shall be had and conducted in reference to the matters investigated in like manner as though complaint had been filed with the commission relative thereto, and the same orders may be made in reference thereto as if such investigation had been made on complaint."

[3] ORS 756.580 provides in part:

"(1) A party to any proceeding before the commission, when aggrieved by any findings of fact, conclusions of law or order, including the dismissal of any complaint or application by the commission, may prosecute a suit against the commission to modify, vacate or set aside such findings of fact, conclusions of law or order.

"(2) Such suit may be commenced by any party so aggrieved in the Circuit

PUC decision may be brought, *inter alia,* in the circuit court for any county in which a "defendant" has its principal office. In the case before us, the accused utility brought a challenge to a PUC order in the circuit court for the county in which its principal office is located. The Court of Appeals held that jurisdiction[4] in that county was not proper under ORS 756.580(2), because there was no party designated by statute as a "defendant" in the "own motion" case. *Pacific Northwest Bell Telephone Co. v. Eachus,* 127 Or App 177, 181, 872 P2d 21 (1994). We allowed review to address the jurisdictional question. For the reasons that follow, we now reverse the decision of the Court of Appeals and remand the case to the Court of Appeals for further proceedings.

On December 6, 1988, the PUC opened, on its own motion, an investigation into rates charged by Pacific Northwest Bell Telephone Company (PNB) to determine whether PNB's earnings were excessive. Such "own motion" rate proceedings are authorized by ORS 756.515.

The Citizen's Utility Board (CUB) and the Utility Reform Project (URP) intervened in the rate proceeding.[5]

---

Court for Marion County, in the circuit court for the county in which any hearing has been held in the proceeding in which the order was made, *or in the circuit court for the county in which is located the principal office of any defendant in any such proceeding before the commission,* and *jurisdiction of any such suit hereby is conferred upon the circuit court for any of such counties* to hear and determine such suit." (Emphasis added.)

[4] Although the circuit court and the Court of Appeals treated the question as a jurisdictional one, we note that, in *Anderson v. Heltzel, Pub. Util. Comm.,* 197 Or 23, 25, 251 P2d 482 (1952), the portion of ORS 756.580 on which the Court of Appeals relied was read to deal with *venue,* rather than with *jurisdiction.* Although we use the term "jurisdiction" in this opinion, because that is the term used in the statute, we do not, indeed we cannot, alter that prior construction. *See State v. Elliott,* 204 Or 460, 464-65, 277 P2d 754, *cert den* 349 US 929, 75 S Ct 772, 99 L Ed 1260 (1955) (this court's construction of a statute stands until changed by legislature); *State v. King,* 316 Or 437, 445, 852 P2d 190 (1993) (same). The distinction is of no consequence in this case, because the PUC's objection to venue was raised in the trial court. *See Anderson,* 197 Or at 25 (jurisdictional challenge was sufficient to preserve venue question on appeal).

[5] CUB filed a petition to intervene and a motion for interim tariffs on January 6, 1989. On January 31, 1989, URP filed a request for "party-intervenor" status in a document titled "Complaint and Petition to Intervene." On March 1, 1989, the PUC hearings officer granted URP intervenor status while noting that URP's complaint was improper, because *former* ORS 757.210 (current ORS 759.180 (1989)), the statute on which URP's complaint was based, applied only where a public utility files new or increased rates; it did not apply to the present proceeding, which was initiated

After hearings held in Marion County, the PUC ordered PNB to reduce annual revenues by $24,057,000. PNB thereafter filed suit[6] against the PUC in the Multnomah County Circuit Court, the county in which PNB's principal office is located, seeking to vacate the PUC's order. CUB intervened in the same suit, challenging the PUC's denial of CUB's motion to declare that the rates charged by PNB from the beginning of the investigation through 1990 were "interim rates" and, as such, were subject to refund. URP, in a separate suit, also challenged the PUC's order in the Multnomah County Circuit Court. All the claims were consolidated. The PUC filed a motion to dismiss the case for lack of subject matter jurisdiction, and the motion was denied. The circuit court sustained the order of the PUC. PNB, CUB, and URP each appealed the circuit court's decision to the Court of Appeals. The PUC cross-appealed on the jurisdiction question. PNB later discontinued its appeal.

In the Court of Appeals, the PUC argued that the Multnomah County Circuit Court erred when it determined that it had subject matter jurisdiction over the case. The Court of Appeals agreed with the PUC and remanded the case to the circuit court with directions to dismiss it for lack of jurisdiction. *Pacific Northwest Bell Telephone Co. v. Eachus,* 127 Or App at 181.

■ On review in this court, petitioners CUB and URP acknowledge that the PNB rate hearing was instigated by the PUC on its "own motion." *See* ORS 756.515(1) and (2) (providing procedure). Petitioners argue, however, that ORS 756.515(3) directs the PUC to proceed with "own motion" cases *as if* a complaint had been filed. ORS 756.515(3), part of the statute governing "own motion" rate proceedings, provides:

"Thereafter proceedings shall be had and conducted in reference to the matters investigated *in like manner as*

pursuant to ORS 756.515. URP did not challenge the status of its "complaint" with the PUC, and we do not consider the vitality of that complaint on review.

[6] We refer to the circuit court proceeding as a "suit," because that is the term used in the pertinent statute, ORS 758.580. Of course, the correct present-day usage is "action," not "suit." *See* ORCP 2 (distinction between actions and suits abolished; civil proceedings to be known as "actions").

*though a complaint had been filed* with the commission relative thereto, and the same orders may be made in reference thereto as if such investigation had been made on complaint."

(Emphasis added.) Petitioners argue that it follows from ORS 756.515(3) that, once a party has been treated *as though* a complaint had been filed, *i.e.*, as a defendant in the PUC hearing, that "defendant" status should apply also to judicial review under ORS 756.580.

The PUC relies on two other parts of Oregon's statutory scheme, ORS 756.500 and 756.580. A "defendant," it argues, is one who has been required to respond to a "complaint." ORS 756.500(1). Because there *was no complaint* filed in the "own motion" proceeding, ORS 756.515(3), there *could be no defendant*. Nothing in the procedural statutes, the PUC urges, could be deemed to make PNB into something that it was not, *viz.*, a defendant, and, if. it was not a defendant, then neither it nor any other aggrieved person could file suit challenging the PUC's order in the county in which PNB maintained its principal office. ORS 756.580.

We believe that the PUC's syllogism goes too far. ORS 756.500(1) does not preclude jurisdiction in Multnomah County, unless that statute defines the *exclusive* hearings process in which an accused utility "shall be known as the defendant."[7] That statute does not purport to be exclusive. In the case before us, ORS 756.500 provides only that, when a complaint is filed, "[t]he person against whom the complaint is filed shall be known as the defendant." ORS 756.515(3) provides that proceedings brought against a utility on the PUC's own motion "shall be had and conducted * * * in like

---

[7] Any other conclusion is contrary to logic. For example, if a statute were to provide, "all steamships shall be red," and another statute to provide "sailing ships shall be treated as though they were steamships," we could logically conclude from the second statute that a sailing ship is not, in fact, a steamship. We could not, however, determine whether sailing ships were "red" — that is, unless the first statute meant "*only* steamships shall be red." As written, the first statute does not *preclude* "red" sailing ships. It says nothing about their color. If we had yet a third statute that provided that "all ships may trade in ports A and B, but only *red* ships may trade in port C," we could not logically determine, from the statutes above, whether sailing ships could trade in port C. Our answer would have to be that "sailing ships can trade in port C *if they are red*."

manner as though complaint had been filed." All that logically can be determined from those statutes is that a proceeding brought on the PUC's "own motion" is not a proceeding brought by "complaint." It is not possible to determine whether a utility accused by the PUC's own motion is a "defendant," unless ORS 756.500(1) defines the *exclusive* set of defendants. But ORS 756.500 does not purport to tell us whether other regulated parties may be known as "defendants," or who those other parties may be. From the foregoing analysis, we conclude that, without an indication that the legislature intended ORS 756.500(1) to be the *exclusive* description of the entire set of "defendants," it is impossible to determine from ORS 756.500(1) alone whether PNB was a "defendant" in this case, for purposes of jurisdiction under ORS 756.580.

◼◼◼ Because the possibility of jurisdiction depends on the exclusivity of the term "defendant" in ORS 756.500(1), we must first determine whether that statute was intended to preclude all other accused utilities from being "known as defendants" in the hearings process. In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The first level of analysis is to examine the text and context of the statute. If the legislature's intent is clear from those inquiries, further inquiry is unnecessary. *Id.* at 611. ORS 756.500(1) identifies who may file a complaint with the PUC and against whom that complaint may be filed. From the text of the statute, we know that "any person," including the PUC itself, may file a complaint and become a "complainant." A complaint may be filed against "any person whose business or activities are regulated by some one or more of the statutes, jurisdiction for enforcement or regulation of which is conferred upon the [PUC]." Once a complaint is filed, the party against whom the complaint is filed "shall be known as the defendant" in the ensuing action. ORS 756.500(1). We find no indication, in the text of ORS 756.500(1), that the legislature intended to make complaint-driven hearings the *exclusive* forum in which an accused utility "shall be known as the defendant." When the intent of the legislature is not clear from the text, we turn to the context of the statute for guidance. *PGE v. Bureau of Labor and Industires*, 317 Or at 611.

The context of ORS 756.500(1) includes all statutes from ORS 756.500 to 756.610. *See* ORS 756.518.[8] Under those procedural statutes, a utility brought before the PUC on its "own motion" is to be given the same procedural safeguards as a utility brought before the PUC by "complaint." An "own motion" utility, for example, must be given adequate notice of matters under investigation by the PUC prior to a hearing on those matters. ORS 756.515(2). Such notice is to be afforded "in the manner provided in ORS 756.512 for notice of complaint." *Id*. The accused utility also is afforded the opportunity to defend itself in "proceedings * * * conducted * * * in like manner as though complaint had been filed." ORS 756.515(3). A utility brought before the PUC on its "own motion" is further afforded the benefit of a written decision, in the form of an order from the PUC, "as if such investigation had been made on complaint." ORS 756.515(3). The procedural safeguards continue in like manner even after the PUC order is issued. *All* regulated utilities may apply for rehearing or reconsideration of a PUC order, regardless whether a "complaint" was filed. ORS 756.561. *All* may seek judicial review. ORS 756.580.

■     Reading the texts of ORS 756.500(1), 756.515(3), and 756.580 in context, as *PGE v. Bureau of Labor and Industries* and ORS 756.518 instruct us to do, it is clear that the legislature intended utilities brought before the PUC in "own motion" cases to be given the same procedural opportunities as utilities brought before the PUC by "complaint." Those procedural opportunities include the opportunity to challenge a PUC order in the circuit court for the county in which the utility's principal office is located. Because we do not believe that the legislature intended, after meticulously mandating equal treatment elsewhere in the PUC statutes, to make a unique distinction between regulated utilities at the judicial review stage, we conclude that the legislature did not

---

[8] ORS 756.518 provides:

"Except as otherwise provided the provisions of ORS 756.500 to 756.610 apply to and govern all hearings upon any matter or issue coming before the commission under any statute administered by the commission, whether instituted on the application, petition or complaint of others or initiated by the commission, together with the orders of the commission therein and the review thereof in the courts."

intend the term "defendant" in ORS 756.580 to refer exclusively to parties accused by "complaint." ORS 756.500(1) does not define the exclusive set of all "defendants," as the PUC argues. Parties brought before the PUC by the PUC's own motion are also "defendants" for purposes of circuit court jurisdiction under ORS 756.580.

It follows from the foregoing that PNB had the right, pursuant to ORS 756.580, to file suit in Multnomah County. The Multnomah County Circuit Court had jurisdiction because PNB's principal office was located in that county and PNB was a "defendant" in the contested rate proceeding. The same was true for the intervening claimants: They filed claims in the circuit court for the county "in which [was] located the principal office" of PNB, a "defendant" under ORS 756.515(3). The Court of Appeals erred in concluding to the contrary.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.